IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   11-cv-02257-MJW

JAMES F. BLUM,

Plaintiff,

v.

TOM CLEMENTS, individually and in his official capacity as Executive Director of the
Colorado Department of Corrections;
TRAVIS TRANI, individually and in his official capacity as Warden of Colorado
Department of Corrections;
ANTHONY A. DeCESARO, grievance officer, Colorado Department of Corrections,
individually and in his official capacity;
LEE ROMANSKI, a member of the sex offender treatment team at Arrowhead
Correctional Facility, individually and in her official capacity;
DANIEL CLAUS, individually and in his official capacity;
S. MICHAEL DUNLAP, individually and in his official capacity;
BURL McCULLAR, individually and in his official capacity;
MARGARET HEIL, individually and in her official capacity;
DAVID TESSIER, individually and in his official capacity;
J.D. SCOLLARD, individually and in his official capacity;
CHRISTINE TYLER, individually and in her official capacity;
DANA KRAKOW, individually and in her official capacity;
BONNIE CANTU, individually and in her official capacity;
CHRISTINA MARQUEZ, individually and in her official capacity;
JENNIFER MARTINEZ, individually and in her official capacity;
LEONARD WOODSON, individually and in his official capacity;
BRIAN KOCH, individually and in his official capacity;
RICHARD LINS, individually and in his official capacity;
CHARLES OLIN, individually and in his official capacity; and
RUSTY LANDER, individually and in his official capacity,

Defendants.

---

## ORDER ON
## MOTION TO DISMISS (DOCKET NO. 75) FILED BY DEFENDANTS

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

2

Initially, this case was before this court pursuant to an Order Referring Case (Docket No. 2) issued by Judge Marcia S. Krieger on August 31, 2011.  On December 20, 2011, the parties filed a joint motion consenting to the disposition of this matter by this court (Docket No. 54).  Pursuant to 28 U.S.C. § 636(c), Judge Krieger entered an order granting the parties' motion and assigning the case for all purposes to this court (Docket No. 62).  The case was reassigned on December 28, 2011 (Docket No. 63).

## PLAINTIFF'S ALLEGATIONS

Plaintiff James Blum alleges the following in his Third Amended Complaint (Docket No. 71).  Plaintiff is a convicted sex offender currently incarcerated in the Colorado Department of Corrections ("DOC").  In March 2007, as part of the Sex Offender Treatment and Monitoring Program ("SOTMP"), plaintiff signed a memorandum titled "More Stringent Reading Material Restrictions for Above-Named Sex Offender."  In April 2010, plaintiff signed a slightly revised version of the same memorandum.  The memorandums, among other things, restricted plaintiff from possessing or viewing material "deemed to be pornographic or contrary" to plaintiff's rehabilitation.

On November 22, 2010, plaintiff was given a memorandum stating that he had been placed on probationary status for his treatment (the "probation memorandum").  The probation memorandum noted that on September 10, 2010, plaintiff admitted to having religious pictures in his possession.  The same day a team of therapists reviewed the pictures and determined they violated the reading material memorandums.  Pictures in plaintiff's possession included religious pictures and non-religious pictures.  Plaintiff was eventually told he could not keep any of the pictures.  The probation

memorandum also noted that plaintiff had been given a writing assignment regarding his masturbation issues to minors, and plaintiff had yet to turn the assignment in.  In addition, the probation memorandum instructed plaintiff to write three papers: (1) a concept paper regarding the fact that plaintiff had kept pictures of children and not told his therapist about it; (2) a paper describing why images of minors are high risk for plaintiff; and (3) a paper on how plaintiff used the "tactic of religiosity" to avoid treatment.

Plaintiff objected to writing the high risk images and religiosity papers. Consequently, a hearing was held and plaintiff was terminated from participation in SOTMP.

In the present matter, Claim One asserts violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*  Plaintiff claims that the denial of access to depictions of all members of either sex under the age of eighteen, including religious images, substantially burdens his free exercise of religion.

Claim Two, brought pursuant to 42 U.S.C. § 1983,  asserts violations plaintiff's due process rights.

Claim Three, brought pursuant to 42 U.S.C. § 1983, asserts violations of the Free Exercise Clause of the First Amendment.  Plaintiff claims the confiscation of plaintiff's religious images, done pursuant to DOC Administrative Regulations, infringes upon plaintiff's right to the free exercise of religion.

Claim Four, brought pursuant to 42 U.S.C. § 1983, asserts violations of plaintiff's due process rights under the Fourteen Amendment.  Plaintiff claims defendants'

procedures for determining when and whether material is subject to censorship fails to provide adequate procedural protection for the due process rights under the Fourteenth Amendment.

Claim Five, brought pursuant to 42 U.S.C. § 1983, asserts that defendants' censorship is over broad and vague under the First Amendment.  Specifically, plaintiff claims defendants' administrative regulations contain censorship criteria which is overly broad, subjective, and unconstitutionally vague.

Claim Six, brought pursuant to 42 U.S.C. § 1983, asserts that defendants' censorship is improper under the First Amendment.

Claim Seven, brought pursuant to 42 U.S.C. § 1983, asserts violations of the Equal Protection Clause and the First Amendment.  Plaintiff claims defendants have not followed their own rules governing censorship of inmate reading materials.

Claim Eight, brought pursuant to 42 U.S.C. § 1983, asserts that Administrative Regulation 300-26 is unconstitutionally vague under the First Amendment, and defendants' policy, custom, and practice in implementing AR 300-26 violates the First Amendment and the Fourteenth Amendment.

Claim Nine, brought pursuant to 42 U.S.C. § 1983, asserts that plaintiff was terminated from the SOTMP without due process and in violation of his Fourteenth Amendment right to equal protection of the laws.

Claim Ten asserts personal participation on the part of several defendants as to alleged First Amendment violations.

Claim Eleven asserts several substantial burdens being placed on plaintiff's practice of religion in violation of his First Amendment rights.

## PENDING MOTION

Now before the court is the Motion to Dismiss (Docket No. 75) filed by defendants on February 2, 2012.  Plaintiff filed a response to defendants' motion on February 23, 2012 (Docket No. 77-1).  A reply was filed by defendants on March 8, 2012 (Docket No. 78).

The court has carefully considered the Third Amended Complaint (Docket No. 71), the motion to dismiss (Docket No. 75), plaintiff's response (Docket No. 77-1), and defendants' reply (Docket No. 78).  In addition, the court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings of fact, conclusions of law, and orders.

Among the reasons defendants argue plaintiff's claims should be dismissed are: (I) to the extent plaintiff sues defendants in their official capacities, defendants are entitled to immunity pursuant to the Eleventh Amendment; (II) to the extent plaintiff sues defendants in their individual capacities, plaintiff has failed to allege the requisite personal participation; (III) Claim Ten and Eleven are not independent claims for relief for which plaintiff is entitled to sue; (IV) Claim One, Three, and Six fail to show that plaintiff's religious exercise has been substantially burdened; (V) Claim Two and Four fail to show that plaintiff has a protected liberty or property interest; (VI) plaintiff does not have standing as to Claim Five and Eight; and (VII) Claim Seven and Nine, which allege Equal Protection violations, fail to state a claim upon which relief can be granted.

Under Rule 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over

6

the subject matter." Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter

jurisdiction is on the party asserting jurisdiction. See Basso v. Utah Power & Light Co.,

495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss pursuant to Rule 12(b)(1) take

two forms. First, a party may attack the facial sufficiency of the complaint, in which case

the court must accept the allegations of the complaint as true. Holt v. United States, 46

F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions

regarding subject matter jurisdiction through affidavits and other documents, the court

may make its own findings of fact. See id. at 1003. A court's consideration of evidence

outside the pleadings will not convert the motion to dismiss to a motion for summary

judgment under Rule 56. See id.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead "enough facts to state a claim to

relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do . . . ." Id. at 555 (citations

omitted). "Factual allegations must be enough to raise a right to relief above the

speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from

conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).  The court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id.  The court thus "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).  "Accordingly, in examining a complaint under Rule

12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id.

## I. Immunity of Defendants in their Official Capacities

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged depravation was committed by a *person* acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (emphasis added). State officials acting in their official capacities are not "persons" acting under color of state law for § 1983 purposes. McLaughlin v. Bd. of Trs. of State Colls. of Colo., 215 F.3d 1168, 1172 (10th Cir. 2000). However, "a state official in his or her official capacity, when sued for prospective injunctive relief" is considered a "person" under § 1983. See Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 n.10 (1989). Suits brought under RLUIPA are similarly limited to prospective injunctive relief pursuant to Eleventh Amendment immunity. See Sossamon v. Texas, 131 S. Ct. 1651, 1658-60 (2011).

Plaintiff's Third Amended Complaint states that each defendant is being sued in their individual and official capacities. Accordingly, the court finds that defendants are entitled to Eleventh Amendment immunity, in their official capacities, to the extent any of plaintiff's claims seek any relief other than injunctive relief.

## II. Personal Participation of Defendants in their Individual Capacities

Under § 1983, when a defendant is sued in his or her individual capacity, the complaint must allege facts that show the defendant personally participated in the alleged violation. See Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997); Jenkins

v. Wood, 81 F.3d 988, 994-95 (10th Cir. 1996) ("[P]laintiff must show the defendant

personally participated in the alleged violation, and conclusory allegations are not

sufficient to state a constitutional violation."); Bennett v. Passic, 545 F.2d 1260, 1262-63

(10th Cir. 1976).

Defendants argue plaintiff has failed to allege sufficient facts to show that each

defendant personally participated in the alleged violations.  In response, plaintiff relies

on a general statement found in paragraph 74 of the Third Amended Complaint that "the

wrongful actions and omissions summarized in the foregoing Complaint were taken by

the Defendants individually and in their supervisory capacities."  Plaintiff cites to

Stidham v. Peace Officer Standards & Training, 265 F.3d 1144 (10th Cir. 2001) for the

proposition that such a general statement is sufficient to show personal participation.

The court does not agree with plaintiff that Stidham allows for such a general

statement.  In Stidham, the plaintiff's complaint listed at least three specific actions

collectively taken by the defendants as to the alleged constitutional violation.  265 F.3d

at 1157.  Conversely, the general statement in plaintiff's Third Amended Complaint, on

its own, does not allege any specific facts.  Rather, plaintiff's statement simply

references "wrongful actions and omissions" summarized earlier in the complaint, and

broadly attributes those actions and omissions to all defendants.  Such a broad,

conclusory statement is clearly insufficient under the Twombly/Iqbal standard.

Accordingly, the court must examine the entirety of plaintiff's Third Amended Complaint

to determine if there is sufficient allegations of personal participation on the part of each

defendant, keeping in mind that specific factual allegations attributed to more that one

or all defendants may be sufficient under Stidham.

10

**A. Defendants Dunlap, Krakow, Tyler, Scollard, and Marquez**

As pointed out by defendants in their response, S. Michael Dunlap, Dana Krakow, Christine Tyler, J.D. Scollard, and Christina Marquez are only specifically mentioned once in the Third Amended Complaint, in a single sentence in Claim Ten. The sentence reads:

> Plaintiff states that the Defendants Dunkap, Krakow, Tyler, Scollard, and Marquez were also therapists (many of them members of the SOTMP) who required Plaintiff, as a condition of being relieved of his probationary status, including the punitive sanctions against him, to admit that his religious exercises were merely "religiosity" and a tactic by which to avoid treatment, although Plaintiff had in fact been asking to receive sex offender treatment for years.

(Third Am. Compl., ¶ 77).  The question then before the court is whether this sentence sufficiently alleges personal participation by those defendants.

The above sentence is cursory and lacking any real specificity.  The sentence simply states that the named defendants required plaintiff to comply with one of the conditions set forth in the probation memorandum.  Plaintiff contends this condition was unconstitutional.  There is no indication as to when each named defendant placed this requirement on plaintiff, or in what manner they did so.  The only real detail included is the fact that the named defendants are therapists.  The sentence essentially does nothing but assert that the named defendants violated plaintiff's rights; it is conclusory and provides no detail, of how the named defendants personally participated. Accordingly, the court finds that plaintiff has failed to plead sufficient facts to show personal participation on the part of defendants Dunkap, Krakow, Tyler, Scollard, and Marquez.

**B. Defendant Clements, Trani, DeCesaro, and Romanski**

Tom Clements, Executive Director of the Colorado DOC, and Travis Trani,

Warden of the Colorado DOC, are likewise only specifically mentioned once in the Third

Amended Complaint, in single sentences in Claim Ten.  The sentences read:

> [T]he Plaintiff avers that Defendant Clements personally participated in the foregoing wrongs perpetrated against Plaintiff in that Plaintiff wrote to Defendant Clements protesting against the wrongs alleged in this Complaint, and Defendant Clements did nothing to correct them. Likewise, Plaintiff wrote directly to Defendant Trani about these wrongs, and Defendant Trani also ignored Plaintiff's letter.

(Third Am. Compl., ¶ 17).

Allegations involving Anthony DeCesaro and Lee Romanski are similarly limited.

Plaintiff states that DeCesaro was the Offender Grievance Officer at "all pertinent times

in this lawsuit."  (Third Am. Compl., ¶ 77).  Plaintiff further states that

> [p]rior to the filing of this lawsuit, Defendant DeCesaro . . . had denied four of Plaintiff's grieances.  Subsequently he denied many more.  Ms. Lee Romanski . . . denied the following grievances, namely: the four grievances denied by Mr. DeCesaro - that is grievances numbered 105 through 108 - and also grievances 101, 102, 103, and 104.  Her denials issued on June 7, 2010, were for the most part, based on her view that Plaintiff Blum's grievances were untimely.  Most of the Plaintiff's grievances which Ms. Romanski denied were denied by her on June 7, 2010.

(Third Am. Compl. ¶ 18).

"Supervisory status alone does not create § 1983 liability."  <u>Gallagher v. Shelton</u>,

587, F.3d 1063, 1069 (10th Cir. 2009).  "Rather, there must be 'an affirmative link . . .

between the constitutional deprivation and either the supervisor's personal participation,

his exercise of control or direction, or his failure to supervise.'"  <u>Id.</u> (quoting <u>Green v.</u>

<u>Branson</u>, 108 F.3d 1296, 1302 (10th Cir. 1997)).

12

Plaintiff's only allegation as to Clements and Trani is that they ignored plaintiff's written grievances.  Plaintiff's only allegation as to DeCesaro and Romanski is that they denied his grievances.  These allegations are plainly inadequate to establish personal participation.  "[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  Gallagher, 587 F.3d at 1069 (citing Whitington v. Ortiz, 307 Fed. Appx. 179, 193 (10th Cir. 2009); Larson v. Meek, 240 Fed. Appx. 777, 780 (10th Cir. 2007); Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002)).  In addition, courts have routinely held that ignoring a written correspondence outlining a complaint does not constitute personal participation.  See Escobar v. Reid, 668 F. Supp. 2d 1260, 1291 (D. Colo. 2009); see also Davis v. Ark. Valley Corr. Facility, 99 Fed. Appx. 838, 843 (10th Cir. 2004) (stating that a "correspondence [to the warden] outlining [a] complaint . . . without more, does not sufficiently implicate the warden under § 1983"); Volk v. Coler, 845 F.2d 1422, 1432 (7th Cir. 1988) (holding that director of state agency did not personally participate in constitutional violation merely because he was aware of grievance); Watson v. McGinnis, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."); Doyle v. Cella, No. 07-cv-01126-WDM-KMT, 2008 WL 4490111, at *2 (D. Colo. Sept. 30, 2008) (finding bare allegation that the defendant warden was "made aware" of constitutional violations insufficient to establish personal participation).

Accordingly, the court finds that plaintiff has failed to plead sufficient facts to show personal participation on the part of defendants Clements, Trani, DeCesaro, and Romanski.

13

**C. Defendants McCullar, Woodsen, Cantu, and Martinez**

Plaintiff states that on September 10, 2010, plaintiff asked Burl McCullar to review the pictures plaintiff had in his possession.  (Third Am. Compl., ¶ 7).  Apparently in response to this request, Bonnie Cantu, Leonard Woodson, and Jennifer Martinez reviewed the pictures that same day.  (Third Am. Compl., ¶ 8).  Some time later, Cantu informed plaintiff that he could not keep any of the pictures.  (Third Am. Compl., ¶ 10).

Taken together, the allegations imply that these defendants personally participated, to some degree, in the decision to force plaintiff to give up his religious pictures.  Accordingly, these allegations are sufficient to show personal participation by defendants McCullar, Woodsen, Cantu, and Martinez in an alleged constitutional violation.

**D. Defendant Tessier**

David Tessier is only specifically mentioned once in the Third Amended Complaint, in single sentence in Claim Ten.  The sentence reads: "Defendant Tessier was Health Services Administrator, an administrator in charge of the therapists and personally involved in Plaintiff's case, as to which Plaintiff sought his intervention and Defendant Tessier refused."  (Third Am. Compl., ¶ 77).

As explained above, a supervisor's denial or failure to acknowledge a grievance does not constitute personal participation.  Accordingly, this allegation is insufficient to show personal participation by defendant Tessier.

**E. Defendant Koch**

Plaintiff alleges that he spoke to Brian Koch in July 2007 regarding the language contained in the reading restrictions memorandum, and plaintiff's concern that he would

be barred from reading his Bible and other religious material.  (Third Am. Compl., ¶ 23).

Plaintiff states that Koch said plaintiff "need not worry, and that the Department of

Corrections had no intention of confiscating any of those items."  (Third Am. Compl., ¶

23).  There are no further allegations regarding Koch.

The act of assuring plaintiff that he would not be barred from reading his Bible

and other religious material is too far removed from the constitutional violations alleged

by plaintiff.  In other words, the personal participation allegedly undertaken by Koch may

have indirectly implicated an alleged violation, but Koch's conduct in no way contributed

to or caused the violation.  Accordingly, the allegation is insufficient to show personal

participation by defendant Koch.

**F. Defendant Claus**

Plaintiff alleges that when Daniel Claus "brought the notices of pending

censorship to the Plaintiff for signature, he had already removed the offending material,

so that it is not possible to determine whether the Reading Committee was correct in its

decision to censor the affected reading material."  (Third Am. Compl., ¶ 28).  Plaintiff

further states that Claus "may have destroyed the subject reading materials without any

malice, but nonetheless the evidence to support the Reading Committee has been lost

through the fault of the DOC."  (Third Am. Compl., ¶ 28).

Claus' personal participation includes allegedly removing offending material and

destroying it.  Plaintiff alleges that this censorship violated his constitutional rights.

Accordingly, plaintiff's allegations as to defendant Claus are sufficient to show personal

participation.

### III. Claim Ten and Eleven are Not Independent Claims

Defendants argue that Claim Ten and Eleven are not independent claims for relief under which plaintiff is entitled to sue.  Defendants point out that these claims are simply recitations of facts supporting particular elements in earlier claims.  Namely, Claim Ten involves the "personal participation" element to establish liability of defendants in their individual capacities, and Claim Eleven involves the "substantial burden" element of claims brought under RLUIPA.  Plaintiff not does argue against this contention in his response.

The court agrees that Claim Ten and Eleven are not independent claims. Rather, these "claims" were plainly added as additional factual support for earlier claims.  Accordingly, the court finds that Claim Ten and Eleven should be dismissed since they are not independent claims.  However, the court will still consider the text of these claims as it relates to the remaining claims.

### IV. Substantial Burden

Under both RLUIPA and the Free Exercise Clause, plaintiff is required to show that defendants' conduct imposed a substantial burden on his religious practice. Abdulhaseeb v. Calbone, 600 F.3d 1301, 1312-15 (10th Cir. 2010) (applying RLUIPA); Gallagher v. Shelton, 587 F.3d 1063, 1069-70 (10th Cir. 2009) (applying the Free Exercise Clause).  Under RLUIPA, the Tenth Circuit has identified three broad ways government action may impose a substantial burden:

> (1) requir[ing] participation in an activity prohibited by a sincerely held
> religious belief, or (2) prevent[ing] participation in conduct motivated by a
> sincerely held religious belief, or (3) plac[ing] substantial pressure on an
> adherent either not to engage in conduct motivated by a sincerely held
> religious belief, such as where the government presents the plaintiff with a

16

> Hobson's choice-an illusory choice where the only realistically possible
> course of action trenches on an adherent's sincerely held religious belief.

Id. at 1315.  Under the Free Exercise Clause, a substantial burden exists if the

government "conditions receipt of an important benefit upon conduct proscribed by a

religious faith, or where it denies such a benefit because of conduct mandated by

religious belief, thereby putting a substantial pressure on an adherent to modify his

behavior and to violate his beliefs."  Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450

U.S. 707, 717-18 (1981).

Among the burdens alleged by plaintiff in his Third Amended Complaint are

"[b]eing required to surrender various art works, religious and non-religious" and "[b]eing

terminated from the sex offender treatment program" due to plaintiff's refusal to write

satisfactory essays on how images of minors were high risk and how he used

"religiosity" as a tactic to avoid treatment.  (Third Am. Compl., ¶ 80).

The court finds that plaintiff has adequately alleged a substantial burden under

RLUIPA and the Free Exercise Clause.  The allegations noted above fall squarely within

the substantial burden standards.  Namely, plaintiff alleges that he was presented with

the choice of remaining in sex offender treatment or giving into the conditions which

plaintiff alleges violate his beliefs.  This is a sufficient allegation of a substantial burden.

**V. Due Process - Liberty or Property Interest**

"A due process claim under the Fourteenth Amendment can only be maintained

where there exists a constitutionally cognizable liberty or property interest which the

state has interfered."  Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006).  A court

reviews "property and liberty interest claims arising from prison conditions by asking

whether the prison condition complained of presents 'the type of atypical, significant

deprivation in which a State might conceivably create a liberty [or property] interest.'"

Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999) (quoting Sandin v. Conner, 515

U.S. 472, 486 (1995)).

A review of plaintiff's Third Amended Complaint indicates that the interests

allegedly interfered with by defendants are (A) plaintiff's property interest in religious

books and religious icons; and (B) plaintiff's liberty interest in his participation in

SOTMP.

## A. Religious Books and Religious Icons

Defendants argue plaintiff does not have a protected interest in possessing

personal property, whether the property is religious or not.  Plaintiff's response does not

specifically address whether he has a protected property interest in religious books and

religious icons.

"While an inmate's ownership of property is a protected property interest that

may not be infringed without due process, there is a difference between the right to own

property and the right to possess property while in prison."  Hatten v. White, 275 F.3d

1208, 1210 (10th Cir. 2002).  If an inmate is given the opportunity to send property he is

not allowed to possess to a place of his choosing, there is no deprivation of property.

See id.; Searcy v. Simmons, 299 F.3d 1220, 1229 (10th Cir. 2002).

In his Third Amended Complaint, plaintiff states that he was allowed to mail the

banned religious and non-religious items to his father.  (Third Am. Compl., ¶ 10).

Consequently, there was no deprivation of these items by defendants.  Plaintiff offers no

argument as to why the deprivation of religious items is an exception to this general

18

rule, and the court can find no source saying otherwise.  The court need not determine

whether plaintiff has a protected property interest in the religious items since no

deprivation has occurred.  Accordingly, the court finds that plaintiff has failed to

adequately allege due process claims as related to the religious images.

**B. SOTMP**

As a convicted sex offender, plaintiff argues he has a protected liberty interest in

sex offender treatment.  Plaintiff cites Chief Judge Wiley Y. Daniel's opinion in <u>Beebe v.</u>

<u>Heil</u>, 333 F. Supp. 2d 1011 (D. Colo. 2004) for support.  Defendants argue <u>Beebe</u> is

distinguishable because plaintiff is not serving an indeterminate sentence.

The court agrees with defendants.  In finding that the plaintiff in <u>Beebe</u> had a

protected liberty interest in sex offender treatment, the court noted that "a state may

create prisoner rights through the use of mandatory statutory language."  333 F. Supp.

2d at 1016-17 (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557 (1974)).  Examining

Colorado's Sex Offender Lifetime Supervision Act ("SOLSA"), the court noted that while

the act affords some discretion as to what kind of treatment is appropriate for an

offender, the act nevertheless mandates that some treatment must take place.  <u>Id.</u> at

1016 (citing C.R.S. § 18-1.3-1004(3)).  Further, the statutory scheme dictates that only

successful therapy can shorten an offender's incarceration; good behavior, parole

policies, or other credits cannot affect the term of an offender's sentence.  <u>Id.</u>

Accordingly, the court found that "confinement and treatment are inextricably linked,"

and thus an offender sentenced under the act has a protected liberty interest in sex

offender treatment.  <u>Id.</u>

However, as pointed out by defendants, plaintiff was not sentenced under

19

SOLSA.  When SOLSA was passed in 1998, the legislature "deliberately chose to retain

the Colorado Sex Offender's Act of 1968's discretionary [therapy] regime for offenses

committed before November 1998."  Helm v. Colorado, 244 Fed. Appx. 856, 858 (10th

Cir. 2007) (citing C.R.S. § 18-1.3-902; 2002 Colo. Sess. Laws ch. 318).  Plaintiff's

offense was committed significantly prior to November 1998.  As such, plaintiff's therapy

is not mandatory in nature, and the reasoning in Bebbe is not present.  In other words,

because plaintiff's parole is not predicated on his therapy, there is no inextricable link

between his treatment and confinement (or liberty therefrom).  While plaintiff may have

any number of personal reasons for taking part in therapy, plaintiff does not have a

protected liberty interest in his participation.  Accordingly, the court finds that plaintiff

has failed to adequately allege due process claims as related to SOTMP.

## VI. Standing - Claim Five and Eight

To show Article III standing, a plaintiff "must allege (and ultimately prove) that

they have suffered an 'injury in fact,' that the injury is fairly traceable to the challenged

action of the Defendants, and that it is redressable by a favorable decision."  Initiative &

Referendum Inst. v. Walker, 450 F.3d 1082, 1087 (10th Cir. 2006).  An injury in fact is

defined as "an invasion of a legally protected interest which is (a) concrete and

particularized and (b) actual and imminent, not conjectural or hypothetical."  Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560 (1996).  "Allegations of possible future injury"

do not satisfy the injury in fact requirement.  Whitmore v. Arkansas, 495 U.S. 149, 158

(1990).

Defendants argue plaintiff has not sufficiently alleged an injury in fact as to Claim

Five and Eight.  Specifically, defendants argue Claim Five and Eight allege generalized

complaints against Colorado DOC's Administrative Regulation (AR) 300-26, and the sections of AR 300-26 cited by plaintiff have nothing to do with plaintiff's claims. Plaintiff's response does not specifically address standing for Claim Five and Eight.

Both Claim Five and Eight allege that AR 300-26 is unconstitutionally vague. Further, Claim Five alleges that AR 300-26 is overly broad and subjective.  While the text of Claim Five and Eight do not specify the injury in fact plaintiff has suffered pursuant to AR 300-26, earlier paragraphs in the Third Amended Complaint do. Paragraphs 25 and 26 describe the censorship process for incoming mail pursuant to AR 300-26.  Paragraph 27 alleges that plaintiff received twenty-one decisions withholding reading materials, and plaintiff's appeals of those decisions were denied. Finally, paragraph 28 alleges that the material was withheld because it depicted persons under the age of eighteen, which was deemed contrary to plaintiff's therapy.

Taken together, paragraphs 25 through 28, and Claim Five and Eight, sufficiently allege an injury in fact.  Plaintiff alleges that actions taken pursuant to AR 300-26, namely the withholding of twenty-one pieces of reading material, violated his rights. Thus plaintiff has pleaded a concrete and particular injury, which actually took place, and involves an alleged protected interest.  Accordingly, the court finds that the allegations in plaintiff's Third Amended Complaint are sufficient to establish standing for Claim Five and Eight.

## VII. Equal Protection - Failure to State a Claim

"The Fourteenth Amendment guarantee of equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" Straley v. Utah Bd. of Pardons, 582 F.3d 1208, 1215 (10th Cir. 2009) (quoting City of Cleburne v. Cleburne

Living Ctr., 473 U.S. 432, 439 (1985)).

Defendants argue plaintiff's Third Amended Complaint fails to allege or identify similarly situated offenders who received more favorable treatment than plaintiff. Defendants also argue that plaintiff has failed to properly identify a protected suspect class which plaintiff is a member of.  In response, plaintiff argues he was denied equal protection of the laws when, he alone among the Colorado DOC inmate population, was required to declare that he was using "religiosity" to avoid sex offender treatment.

Although plaintiff does not specifically name it, it seems clear plaintiff is attempting to proceed under the "class-of-one" theory of equal protection; nowhere does plaintiff allege that he is a member of a particular class, whether a protected class or not.  In order to state an Equal Protection claim under the "class-of-one" theory, a plaintiff claiming he was treated differently than other inmates must allege he was similarly situated to the other inmates, and that the difference in treatment was not reasonably related to legitimate penological interests.  See Brown v. Montoya, 662 F.3d 1152, 1173 (10th Cir. 2011); Fogle v. Pierson, 435 F.3d 1252, 1260 (10th Cir. 2006).

Plaintiff simply alleges that he was treated differently than other inmates. Plaintiff's Third Amended Complaint does not allege any facts about any particular person or persons who were treated differently from him; plaintiff makes only conclusory allegations.  "[I]n the context of a § 1983 claim, '[c]onclusory allegations are not sufficient to state a constitutional violation.'"  Brown, 662 F.3d at 1173 (quoting Robertson v. Las Animas Cnty. Sheriff's Dept., 500 F.3d 1185, 1193 (10th Cir. 2007)). Accordingly, the court finds that plaintiff has failed to state an Equal Protection claim.

22

**ORDER**

 **WHEREFORE,** for the foregoing reasons, it is hereby

 **ORDERED** that defendants' motion is **GRANTED** insofar as all defendants are **DISMISSED** in their official capacities to the extent any of plaintiff's claims seek any relief other than injunctive relief.  It is further

 **ORDERED** that defendants' motion is **GRANTED** insofar as defendants Clements, DeCesaro, Dunlap, Krakow, Koch, Marquez, Romanski, Scollard, Tessier, Trani, and Tyler are **DISMISSED** in their individual capacities as to any claims brought under § 1983.  It is further

 **ORDERED** that defendants' motion is **GRANTED** insofar as Claim Ten and Eleven are **DISMISSED**.  It is further

 **ORDERED** that defendants' motion is **GRANTED** insofar as any claims brought under the Due Process Clause, including Claim Two, Four, and the Due Process portion of Claim Nine, are **DISMISSED**.  It is further

 **ORDERED** that defendants' motion is **GRANTED** insofar as any claims brought under the Equal Protection Clause, including Claim Seven and the Equal Protection portion of Claim Nine, are **DISMISSED**.  It is further

 **ORDERED** that defendants' motion is **DENIED** on all other grounds.  It is further

 **ORDERED** that the deadline for dispositive motions shall be set for July 31, 2012. It is further

23

**ORDERED** that the final pretrial conference shall be held on October 1, 2012 at 9:00 a.m. in Courtroom A-502.


Date:  June 28, 2012                   s/ Michael J. Watanabe
       Denver, Colorado                Michael J. Watanabe
                                       United States Magistrate Judge